UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMIKA S. ALEXANDER,

    Plaintiff,

  v.              **DECISION AND ORDER**
                   17-CV-973S
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

  1.  Plaintiff Tamika S. Alexander brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.  (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

  2.  Plaintiff protectively filed applications for DIB and SSI on February 28 and September 9, 2015, respectively.  (R.[1] at 51, 125-30).  Plaintiff alleged disability since January 2, 2013 due to schizophrenia and depression.  (R. at 51, 158).  Plaintiff's applications were denied on May 28, 2014 (R. at 50), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 74).

  3.  On May 6, 2016, ALJ Raymond L. Souza held a video hearing at which Plaintiff—assisted by counsel—and vocational expert ("VE") Stella Doering appeared and testified.  (R. at 26-49).  At the time of the hearing, Plaintiff was 35 years old (R. at 29,

---

[1] Citations to the underlying administrative record are designated as "R."

51), with at least an 11th grade education (R. at 30), and past work experience as a garment presser and a cosmetics presser. (R. at 30-31, 47, 148).

4. ALJ Souza considered the case *de novo* and, on June 29, 2016, issued a written decision denying Plaintiff's applications. (R. at 14-21). The Appeals Council denied Plaintiff's request to review the ALJ's decision on May 18, 2017. (R. at 1-4).

5. Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on July 7, 2017. (Docket No. 1). Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 12). Plaintiff filed a response on May 25, 2018 (Docket No. 13), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the function of a reviewing court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks omitted). The Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant

---

[2] ALJ Souza's June 29, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

2

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

4

11. ALJ Souza analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 2, 2013, the alleged onset date. (R. at 16). At step two, the ALJ found that Plaintiff's schizophrenia and depression are severe impairments. Id. At step three, the ALJ found that Plaintiff's impairments, singly or in combination, do not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18).

12. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "[Plaintiff] should not work at unprotected heights or around moving mechanical parts, and she is limited to simple. routine tasks (SVP 1-2) with only occasional interaction with the public, co-workers, and supervisors." (R. at 18-21). At step four, the ALJ found Plaintiff capable of performing her past relevant work as a garment presser. (R. at 21). Accordingly, the ALJ found that Plaintiff is not disabled. Id.

13. Plaintiff argues that the ALJ's decision "fails to provide a clear basis for finding that [P]laintiff's episodes of decompensation did not meet […] Listing [12.03(C)(1)]." (Docket No. 10 at 9). For the reasons that follow, this argument fails.

14. Under SSA regulations in effect during the relevant period[3], a claimant would meet or medically equal the criteria for Listing 12.03(C)(1) if there is evidence of:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and

---

[3] SSA Listings involving mental disorders were revised effective January 17, 2017. All herein citations to the Listings refer to the regulations in effect at the time of the ALJ's June 26, 2016 decision.

5

> (1) repeated episodes of decompensation, each of extended duration

C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03(C)(1)

15. "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. The existence, severity, and duration of such episodes "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record." Id.

16. In this case, it is undisputed that Plaintiff experienced five periods of decompensation, each of which included a period of hospitalization as follows:

> March 15, 2013—March 27, 2013 (12 days). (R. at 217-19);
> June 3, 2013—June 7, 2013 (4 days). (R. at 220-25);
> August 26, 2013—September 6, 2013 (11 days). (R. at 241-96);
> November 8, 2014—November 22, 2014 (14 days). (R. at 363-419); and
> February 26, 2015—March 16, 2015 (18 days). (R. at 420-77).

(Docket No. 10 at 8); (R. at 17).

17. Listing 12.03 is met when a claimant has experienced episodes of decompensation that meet certain frequency and durational criteria. See C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03(C)(1). "[R]epeated episodes of decompensation, each of extended duration […] means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Id. at § 12.00(C)(4).

18. These criteria may also be met if an ALJ judges the duration and functional effect of "more frequent episodes of shorter duration or less frequent episodes of longer duration" to be of "equal severity." Id.

19. Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff's schizophrenia does not meet or medically equal the relevant Listing criteria. (Docket No. 12 at 19). See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify") (emphasis in the original).

20. Here, the ALJ found that "[a]s for periods of decompensation, [Plaintiff] has experienced three episodes of decompensation, each of extended duration." (R. at 17). Specifically, the ALJ found that "[Plaintiff] had inpatient treatment in 2013 with one episode of extended duration from August 26, 2013 to September 9[4], 2013." Id. The ALJ also found that "[Plaintiff] required treatment of extended duration in 2014 and 2015," but noted that each hospitalization "occurred secondary to stopping medication that controls [Plaintiff's] symptoms." Id.

21. Plaintiff disputes the ALJ's determination that her schizophrenia does not meet the criteria of Listing 12.03 as clear error, stating "there is no question that [P]laintiff's episodes of decompensation each lasted well in excess of two weeks" and thus "the 'C' criteria of Listing 12.03 are satisfied." (Docket No. 10 at 9).

22. Of Plaintiff's five episodes of decompensation, the only three that occurred within any rolling 12-month period of each other occurred in 2013. That year, Plaintiff

---

[4] Plaintiff was discharged on September 6, 2013, rather than on September 9th. (R. at 303).

was hospitalized for 12 days in March (R. at 217-19), for 4 days in June (R. at 220-25), and for 11 days in August/September (R. at 241-96).

23. Plaintiff experienced a fourth episode of decompensation more than a year later, in November 2014 (R .at 363-419), and a fifth episode several months after that in February/March 2015 (R .at 420-77). However, neither of these episodes occurred within one year of any third episode as required to meet the frequency criterion of Listing 12.03.

24. With respect to the three episodes in 2013, Plaintiff acknowledges that none of these hospital stays lasted for at least two weeks. (Docket No. 10 at 8-9). Nevertheless, Plaintiff maintains that "the medical evidence […] establishes that each of [P]laintiff's five documented episodes of decompensation lasted for more than two weeks." Id. In support of this claim, Plaintiff directs this Court to statements made by Plaintiff's family members to hospital staff during each of her inpatient stays. Id.

25. Plaintiff's first hospitalization, on March 15, 2013, occurred prior to any diagnosis or treatment of her psychiatric conditions. (R. at 217). At that time, Plaintiff had no known past psychiatric history and was taking no medication but was observed behaving "in a bizarre manner during a meeting" at her daughter's school. Id.

26. Plaintiff's mother bought her to the hospital for psychiatric evaluation. (R. at 217). Plaintiff exhibited paranoia, disorganized thoughts, irritable mood, and restricted affect. Id. Hospital records indicate Plaintiff had been fired from her job several months prior, in December of 2012, and Plaintiff's mother reported that she had been acting "bizarre" for the past 2-3 months. (R. at 239).

27. Plaintiff was diagnosed with psychosis, not otherwise specified, and schizophreniform disorder was ruled out. (R. at 218). The record indicates Plaintiff

8

responded adequately to medication with no side effects and upon discharge on March 27, 2013, Plaintiff had no suicidal ideations, no auditory or visual hallucinations, her mood was improved, and she was deemed "ready for outpatient followup." Id.

28. On June 2, 2013, Plaintiff was again hospitalized after she became agitated while at her sister's house and was reportedly "in the streets screaming." (R. at 220). Plaintiff had stopped taking her prescribed medications "as soon as the prescription ran out," "because she felt it was making her back fat." Id. Plaintiff's sister reported that Plaintiff had been "getting increasingly bizarre since stopping her medication in early May." Id.

29. A mental status examination found Plaintiff to be paranoid and seemingly delusional, as well as somewhat vague in thought content. (R. at 221). Plaintiff's insight and judgment were limited, and she did not understand why she was hospitalized. Id. Plaintiff was diagnosed with schizophreniform disorder and medicated. Id.

30. Plaintiff was discharged home on June 7, 2013, "showing no clear psychotic symptoms" and having denied "any suicidal or homicidal ideation." (R. at 224-25). It was also noted that "[Plaintiff] is making good future plans, and has a supportive family" and "[s]he is agreeable to tak[ing] medications." Id.

31. On August 26, 2013, Plaintiff's mother brought her to the hospital once again. (R. at 226). This time, Plaintiff presented with auditory hallucinations and psychosis and stated that she had been unable to sleep because she had been hearing voices in her head for the past two weeks. Id. Her mother reported that Plaintiff "has been acting bizarrely for the past few weeks […] talking to self, laughing when alone." Id.

32. Hospital records note Plaintiff "has not taken her meds since being discharged in [A]pril this year." (R. at 226). Plaintiff's treatment noncompliance was confirmed by her mother, who stated, "[Plaintiff] never followed up with outpatient services" (R. at 226) and "had not been compliant with any medications other than possibly Adderall," which may have exacerbated her condition (R. at 242).

33. With prescribed medication, Plaintiff "continued to improve." (R. at 242). Kyle Wiktor, N.P. stressed the importance of Plaintiff's continued compliance with treatment and spoke with both Plaintiff and her mother about the fact that "[Plaintiff's] prognosis is going to be determined by her medication compliance." Id. Hospital records note "[Plaintiff] stated she would stay on the medications because she was taking the medication without any side effects and it was helping." Id. Upon discharge on September 6, 2013, Plaintiff was safe and stable, and was "aware" that noncompliance with outpatient treatment would increase the risk of decompensation. (R. at 243-44).

34. It is well-settled that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Plaintiff's reported behavior prior to being hospitalized does provide some support for the claim that her "decompensation started well before she was hospitalized." (Docket No. 10 at 9). However, this Court's inquiry is limited to whether substantial evidence supports the ALJ's determination that these episodes do not satisfy the criteria of Listing 12.03.

35. In arguing that the ALJ erred in finding that Plaintiff's schizophrenia does not meet Listing 12.03, Plaintiff asks this Court to find that the length of Plaintiff's hospitalizations is not substantial evidence of the duration of her episodes of decompensation. However, Plaintiff does not provide caselaw to support this position,

10

and instead relies solely on vague statements from family members about Plaintiff's allegedly "bizarre" behavior preceding her hospitalizations. Contra Donovan v. Comm'r of Soc. Sec., 2013 U.S. Dist. LEXIS 165781, *29, 2013 WL 6094741 (E.D. Mich. Nov. 20, 2013) (holding that despite a claimant's argument that his "periods of decompensation continued both prior to and subsequent to his hospital admission," where "the record is largely silent as to [claimant's] condition immediately prior and after hospitalization," substantial evidence supported a finding that hospital stays of four, five, and eight days did not qualify as episodes of decompensation of "extended duration").

36. In fact, courts have frequently found that the length of a psychiatric hospitalization is substantial evidence of the duration of a claimant's episodes of decompensation. See Grant v. Colvin, 2014 U.S. Dist. LEXIS 132608, *48, 2014 WL 4667327 (S.D.N.Y. Sept. 19, 2014) (holding that "none [of a claimant's four psychiatric hospital admissions, which lasted, respectively, 1 day, 12 days, 5 days, and 3 days] reflects episodes of decompensation that satisfy the durational requirement."); Griffiths v. Astrue, 2011 U.S. Dist. LEXIS 1592, *18-19, 2011 WL 53096 (N.D. Ohio Jan 7, 2011) (Affirming the ALJ's finding that a claimant's mental impairment did not meet the decompensation requirement of Listing 12.03C because "[n]one of Plaintiff's hospitalizations lasted for at least two weeks as required by the Listing"); Ramos Rivera v. Colvin, 2016 U.S. Dist. LEXIS 102498, *11-12 (D.P.R. Aug. 2, 2016) (affirming an ALJ's finding that the durational component of the Paragraph C criteria was not satisfied by a claimant's suicide attempt and subsequent eight-day hospitalization); Washington v. Colvin, 2017 U.S. Dist. LEXIS 30820, *19, 2017 WL 875301 (E.D. Mich. Mar. 6, 2017) (holding that where a claimant was hospitalized due to auditory hallucinations and suicidal

ideations but was free of these symptoms upon discharge, "[t]his four-day hospitalization is not long enough to be considered of 'extended duration'").

37. Contrary to Plaintiff's assertions, her family members' statements about Plaintiff's behavior prior to each admission do not clearly establish that "[P]laintiff's episodes of decompensation each lasted well in excess of two weeks." (Docket No. 10 at 9). Far from constituting compelling proof of a totally disabling condition, these statements fail to give examples or details regarding Plaintiff's allegedly "bizarre" behavior and are equally vague with respect to timing of the episodes.

38. Moreover, each time Plaintiff was hospitalized in 2013, her symptoms were effectively addressed with medication and resolved in less than two weeks. For these reasons, this Court finds that substantial evidence supports the ALJ's determination that Plaintiff's schizophrenia does not meet the decompensation criteria of Listing 12.03.

39. Plaintiff also argues the ALJ erred in considering her noncompliance with prescribed medications. (Docket Nos. 10 at 8, 13 at 1). Referencing the RFC determination, Plaintiff claims that the ALJ found her not disabled "because […] [P]laintiff's hospitalizations and/or episodes of decompensation were attributable to her willful noncompliance with her psychiatric medication." Id.

40. This is a distortion of the ALJ's holding. In determining Plaintiff's RFC, the ALJ first considered "whether the 'paragraph C' criteria are satisfied" and found no evidence of "repeated episodes of decompensation, each of extended duration." (R. at 17-18). As detailed above, the ALJ noted that "some" of Plaintiff's multiple hospitalizations "met the definition for extended duration." Id. The ALJ further noted that these episodes "occurred only when she stopped taking medication that the medical

records and her testimony show control her symptoms." (R. at 18). "Thus if [Plaintiff] had not stopped taking her medication, she would not have required hospitalization." Id.

41. This Court finds no legal error in this discussion. As explained above, substantial evidence supports a finding that Plaintiff's episodes of decompensation do not meet the frequency and durational criteria of Listing 12.03. This evaluation is unchanged regardless of whether Plaintiff decompensated because of willful noncompliance with treatment or otherwise.

42. Thus, Plaintiff's argument that she "has a justifiable excuse for her noncompliance insofar as this behavior was and is a product of her disabling mental illness" is irrelevant to the question of whether the ALJ's decision is supported by substantial evidence and does not warrant remand.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: May 7, 2019
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge